UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LISA JANDT,

    Plaintiff,

 v.               Case No. 18-C-737

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

---

**DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION**

---

  This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Lisa Jandt's application for a period of disability and disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. For the reasons set forth below, the Commissioner's decision will be affirmed.

**BACKGROUND**

  On May 12, 2014, Jandt filed an application for disability and disability insurance benefits as well as for supplemental security income, with an alleged onset date of April 1, 2014. She listed shingles, bypass surgery, hysterectomy, severe lower back pain, depression, high blood pressure, severe arthritis, emphysema, bronchitis, and insomnia as the conditions that limited her ability to work. R. 226. Following the denial of her application initially and on reconsideration, Jandt requested a hearing before an administrative law judge (ALJ). ALJ John Martin held a hearing on January 11, 2017. Jandt, who was represented by counsel, and a vocational expert (VE) testified. R. 37–71.

At the time of the hearing, Jandt was 54 years old and lived in a mobile home with her fiancé. R. 44. She had an eleventh grade education and nursing training and had previously worked as a cook, a CNA, and a cashier. R. 44–45. Jandt indicated that, although she has cardiac problems, diabetes, neuropathy, chronic obstructive pulmonary disease, and gastroenterology, her lower back issues primarily interfered with her ability to work. R. 42. She stated that she has difficulty sitting and standing in one spot for a period of time without leaning on something. R. 50. If she is on her feet too long, her lower back begins to burn. R. 55.

In a decision dated March 20, 2017, the ALJ found Jandt was not disabled. The ALJ concluded Jandt had not engaged in substantial gainful activity since April 1, 2014, her alleged onset date, and also met the insured status requirements. R. 25. The ALJ found Jandt had the following severe impairments: degenerative disc disease, peripheral arterial disease, ischemic heart disease, chronic obstructive pulmonary disease, and obesity. *Id.* He then determined that Jandt's impairments did not meet or medically equal any listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 27. The ALJ concluded Jandt had the residual functional capacity (RFC) to perform a range of light work, with the following limitations:

> She can lift, carry, push and pull weights of up to twenty pounds on an occasional basis and similarly handle weights of ten pounds or less on a frequent basis. She can sit, stand, or walk for as much as six hours each during an eight hour workday but should avoid concentrated exposure to pulmonary irritants such as dust, fumes and odors, and other pulmonary irritants.

*Id.* With these limitations, the ALJ concluded Jandt is capable of performing her past relevant work as a short order cook, cashier, and hotel clerk. R. 29. As a result, the ALJ found Jandt was not disabled within the meaning of the Social Security Act. R. 30.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Jandt's request for review. After the Appeals Council issued its decision, Jandt commenced this action for judicial review.

**LEGAL STANDARD**

The question before the court is not whether it agrees with the Commissioner that Jandt is not disabled. Judicial review of the decisions of administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court recently reaffirmed that "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Beistek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this

3

standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Jandt asserts that the ALJ's decision must be reversed for four reasons: (1) the ALJ's reliance on the opinions of the State Agency physicians was misplaced because the opinions were outdated and failed to address significant evidence developed following their assessments; (2) the Appeals Council failed to properly evaluate new and material evidence that had a reasonable probability of changing the outcome of the case; (3) the ALJ failed to consider Jandt's obesity as part of his determination of whether Jandt met any of the listed impairments; and (4) the ALJ failed to consider Jandt's non-severe impairments as part of the adopted RFC. The court will address each challenge in turn.

**A. State Agency Physician Opinions**

Jandt claims that the ALJ erred in relying on the opinions of the state agency reviewing physicians, who did not have access to new, significant medical evidence that was submitted after their review, to find that Jandt could perform light work. State agency physicians Drs. Walcott and Foster completed their physical functional capacity assessment on October 9, 2014 and March 31,

2015, respectively, and limited Jandt to a range of light work. R. 81–82, 104–07. The ALJ assigned great weight to these opinions because "Drs. Walcott and Foster are well acquainted with the disability criteria" and no opinion of record contradicted their opinions. R. 29. Neither state agency physician considered medical evidence that occurred after March 31, 2015.

Jandt asserts that the ALJ's decision is flawed because he relied on outdated medical opinions that did not consider all of the medical evidence in the record, including her April 2, 2015 and June 24, 2016 lumbar MRIs and records pertaining to an October 7, 2015 epidural steroid injection, a February 18, 2016 diagnostic lumbar medial branch block procedure, two radio frequency ablations, and a surgical evaluation. An ALJ does not commit reversible error simply because he relied on the opinions of state agency physicians who did not review all of the medical evidence in the record, however. An ALJ is not required to consult a medical expert about every piece of medical evidence submitted by the claimant. Generally, claimants continue to receive treatment up to and even after the date of the administrative hearing, which occurs long after the state agency physicians reach their opinions. "If an ALJ were required to update the record any time a claimant continued to receive medical treatment, a case might never end." *Keys v. Berryhill*, 679 F. App'x 477, 480–81 (7th Cir. 2017) (citing *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)).

Citing *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018), Jandt contends that the ALJ ignored significant medical evidence which undermined the state agency assessments, and that if the ALJ did not ignore the evidence, the ALJ nevertheless erred because he made his own lay interpretation of the evidence. In *Moreno*, the Seventh Circuit held that the ALJ "should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses

5

reasonably could have changed the reviewing physician's opinion." *Id.* at 728. The new evidence in that case consisted of a treating psychologists' office notes which documented "significant and new developments" in the claimant's mental health. *Id.* Jandt's MRIs, in contrast, did not reveal a new diagnosis and no doctor noted any significant or new developments in her conditions based on the imaging studies. The ALJ therefore did not play doctor by commenting on the MRI as reported by the physician who reported on the study and noted that the x-rays and MRIs from 2016 showed no significant changes in Jandt's back condition. Jandt has provided no evidence that her imaging studies would have changed the opinions of the state agency physicians, and no medical professional opined that Jandt's conditions had deteriorated after the state-agency physicians completed their reviews of the record. Without a medical opinion from her physician supporting her claim, the ALJ did not err in relying on the state-agency's uncontradicted opinions that Jandt could perform light work. *See Olsen v. Colvin*, 551 F. App'x 868, 874–75 (7th Cir. 2014) (finding that ALJ did not "play doctor" when she summarized the results of each of claimant's MRIs and concluded from those tests that claimant's abnormalities were mostly mild); *Keys*, 679 F. App'x at 480–81 (finding no error when ALJ did not send updated records to the consulting physicians because claimant failed to "explain how the findings on those reports undermine" their opinions).

In addition, the ALJ in this case did not ignore relevant medical evidence or substitute his own judgment for that of the medical professionals. To the contrary, the ALJ thoroughly discussed the medical evidence in the record and concluded that the clinical evidence supported the state agency physicians' opinions. The ALJ noted that records from Langlade Hospital in 2014 included pulmonary function studies documenting minimal obstructive pulmonary disease as well as MRI scans confirming L3-4 and L4-5 disc disease without evidence of significant foraminal or canal

6

stenosis. He observed that Jandt's doctors described her back pain as myofascial or possibly somatic in nature. R. 25. He indicated that doctors have prescribed oxycodone for Jandt's back pain in the past, though some doctors opined that her back problems did not warrant ongoing opioid treatment. The ALJ noted that Jandt reported experiencing 70 to 80% improvement after steroid injections and that x-rays and MRIs from 2016 showed no significant changes in her back condition. The ALJ explained that her most recent physical in September 2016 showed normal range of motion, strength, and sensation with no evidence of significant neurological abnormality. *Id.*

As to her other physical conditions, the ALJ stated that Jandt had an episode of peripheral vascular disease. She underwent surgical procedures that included aortic angioplasty and stent placement on two occasions, and recent ultrasound Doppler testing produced negative results that did not reveal evidence of deep venous thrombosis. The ALJ observed that doctors have described Jandt as having only mild circulatory insufficiency of her lower extremities. *Id.* at 26. He noted that, in August 2016, Jandt underwent a surgical procedure for repair of a chronic anal fissure. She complained of intense pain three days later and took an ambulance to the hospital. Upon examination, doctors discovered a residual abscess and noted that Jandt had chronic pain issues and chronic immobility issues. The ALJ noted that the doctors described Jandt's reports of pain well out of proportion to the objective findings and had trouble making her comfortable. *Id.* The ALJ stated that doctors have treated Jandt for knee pain, and x-rays of Jandt's knees did not reveal any abnormalities. He noted that Jandt underwent a procedure to correct an umbilical hernia in 2015. *Id.* In sum, the ALJ properly evaluated the medical evidence, including the opinions of the state agency physicians, in reaching his decision.

**B. Appeals Council's Decision**

Jandt argues that the Appeals Council failed to consider and evaluate new and material medical evidence she submitted in connection with her request for review. The medical evidence consisted of records relating to the L4-S1 laminectomy and L4-S1 posterolateral fusion Jandt underwent one week after the ALJ issued his decision. The regulation governing Appeals Council review states, in relevant part, that the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The district court's ability to review the Appeals Council's decision is dependent on the grounds on which the Appeals Council declined to grant plenary review:

> If the Council determined [plaintiff's] newly submitted evidence was, for whatever reason, not new and material, and therefore deemed the evidence "non-qualifying under the regulation," we retain jurisdiction to review that conclusion for legal error. However, if the appeals council deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was "contrary to the weight of the evidence"—the Council's decision not to engage in plenary review is "discretionary and unreviewable."

*Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015) (citations omitted). When the Appeals Council declines discretionary review after considering the new evidence against the weight of the evidence, the district court only retains jurisdiction to review the ALJ's decision, which is the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

In this case, the Appeals Council stated, "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this

8

evidence." R. 2. The Appeals Council's decision declining to engage in plenary review of the ALJ's decision as a result of Jandt's failure to demonstrate that the ALJ's decision was contrary to the weight of the evidence is discretionary and therefore unreviewable.

**C. Step Three Determination**

Jandt claims that the ALJ improperly assessed the listings associated with her physical condition and obesity at Step Three. The ALJ concluded at Step Two that Jandt has the severe impairment of obesity. R. 26. He noted that records from "Draeger Chiropractic from November 2016 described Ms. Jandt as 68 inches tall and 205 pounds. This equated to a body mass index (BMI) of 31.2 (a body mass index over 30 is indicative of obesity)." *Id.* At Step Three, the ALJ found that Jandt's "impairments do not meet or equal the requirements of sections 1.04 (spine disorders), 3.02 (chronic pulmonary insufficiency), 4.04 (ischemic heart disease), 4.12 (peripheral artery disease), [or] those of any other listed impairment in Appendix 1, Subpart P, Regulations No. 4." R. 27. Jandt asserts that the ALJ failed to properly analyze the medical record evidence with respect to listing 1.04. Listing 1.04 requires a spinal disorder "resulting in compromise of a nerve root . . . or the spinal cord," plus one of three alternatives, such as, "[e]vidence of nerve root compression, characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. The ALJ explained that Jandt "has myofascial back pain with full range of motion, strength, and sensation and no neurological abnormalities. There is no evidence of arachnoiditis, muscular wasting or atrophy, or medical reason for any limitations in terms of manipulation or gait and station." R. 27. Jandt concedes that,

9

while she may not have met every element of the listing directly, the ALJ was required to assess her obesity in combination with her other impairments when determining whether she equaled the listing.

Jandt bears the burden of articulating how her obesity exacerbated her underlying conditions and further limited her functioning. *See Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008). Jandt has not met her burden here. She has neither alleged that her obesity exacerbated her underlying conditions nor pointed to any evidence in the record showing that her obesity impacted her other impairments. The Seventh Circuit has recognized that, in the absence of contrary evidence, the opinions of state agency reviewing physicians and psychologists constitute substantial evidence on the issue of whether a claimant meets or medically equals any listing. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). State agency physicians Dr. George Walcott and Dr. Syd Foster reviewed the record and found that Jandt's conditions do not meet or equal any listing, including listings for spine disorders, pulmonary insufficiency, and heart disease. R. 79, 103. These opinions were reflected in the state agency Disability Determination and Transmittal forms. The Seventh Circuit has made "clear that the ALJ may rely solely on opinions given in Disability Determination and Transmittal forms and provide little additional explanation only so long as there is no contradictory evidence in the record." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citing *Scheck*, 357 F.3d at 700–01). Again, Jandt has presented no contradictory evidence suggesting her obesity meets or equals a listing or that her obesity impacts her other impairments such that a listing is met. Accordingly, the court does not find that the ALJ erred in relying upon these medical opinions when the ALJ concluded Jandt did not meet or equal a listing.

**D. Non-Severe Impairments**

Jandt asserts that the ALJ failed to consider her nonsevere impairments as part of the adopted RFC. An RFC represents the most that a claimant can do despite the physical or mental limitations imposed by her impairments. 20 C.F.R. § 404.1545(a)(1). An ALJ must assess a claimant's RFC "based on all the relevant evidence" in the case record, including severe and nonsevere impairments as well as medical and non-medical evidence. § 404.1545(e). The ALJ's hypothetical question to the VE must then incorporate all of the limitations identified in the RFC. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)).

The ALJ in this case concluded Jandt has the RFC to perform light work. He noted, "She can lift, carry, push and pull weights of up to twenty pounds on an occasional basis and similarly handle weights of ten pounds or less on a frequent basis. She can sit, stand, or walk for as much as six hours each during an eight hour workday but should avoid concentrated exposure to pulmonary irritants such as dust, fumes and odors, and other pulmonary irritants." R. 27. Jandt asserts that the ALJ failed to consider the effects of her diabetes mellitus and ignored evidence of her knee pain.

But Jandt does not indicate what additional limitations created by these conditions should have been included. The regulations require an ALJ to "consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p, 1996 WL 374184, at *5. Stated differently, if the claimant does not allege that an impairment creates a certain limitation or restriction, the ALJ cannot find that such a limitation exists. *Id.* at *1 ("When there is no allegation of a physical or

mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."). No social security regulation or ruling requires that the ALJ find limitations associated with or caused by a nonsevere impairment merely because he finds that the claimant has that impairment.

In creating the RFC, the ALJ considered Jandt's medical history, medical source statements, the functional reports, as well as Jandt's testimony. The ALJ summarized the record as it pertained to Jandt's severe and nonsevere impairments. As to Jandt's diabetes mellitus, Jandt claims that her diabetes was poorly controlled at times and she experienced peripheral neuropathy in her lower extremities. Yet, the ALJ noted that treatment notes from March 2016 stated that Jandt did not have significant complications from non-insulin dependent diabetes, and Jandt does not cite to evidence showing that her diabetes caused limitations after March 2016. As to her knee pain, Jandt asserts that the ALJ ignored a CT-scan that showed she had a small popliteal cyst in her left knee that caused it to give out or lock up. The ALJ observed that doctors have treated Jandt for knee pain and that x-rays of Jandt's knees did not reveal any abnormalities. R. 25. Jandt did not produce any evidence showing that the left-knee cyst caused any dysfunction or greater limitations than those described in the RFC.

Jandt has failed to point to any record evidence establishing that her nonsevere impairments cause limitations beyond what the ALJ found in the RFC, and substantial evidence supports the ALJ's RFC finding. Accordingly, the ALJ did not err in failing to find that Jandt did not have additional limitations caused by her diabetes mellitus and knee pain.

## CONCLUSION

For the reasons above, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** this   18th   day of September, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
